UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAROLD THOMAS,

       Petitioner,

v.                                          Case No. 2:11-CV-10653
                                          HON. R. ALLAN EDGAR

KENNETH MCKEE, et al.,

       Respondent.

_____/

**OPINION AND ORDER**

      Petitioner filed this § 2254 petition for writ of habeas corpus challenging the validity of his state court conviction for violations of his Fifth, Sixth, and Fourteenth Amendment rights. In 2008, after a bench trial, Petitioner was convicted of armed robbery (MICH. COMP. LAWS § 750.529) and resisting and obstructing (MICH. COMP. LAWS § 750.81d(1)). Petitioner was sentenced as a fourth habitual offender to fifteen to forty years for the armed robbery conviction and five to fifteen years for the resisting and obstructing conviction. Petitioner remains in the custody of the Michigan Department of Corrections.

      After his conviction, Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, claiming that "the prosecution abused its discretion by charging defendant in the alternative with both robbery and bank robbery." ECF No. 8 at 5. The Court of Appeals denied Petitioner's application and affirmed his convictions on October 6, 2009. ECF No. 8 at 5; ECF No. 18-18.  Petitioner then filed an  application for leave to appeal in the Michigan Supreme Court, raising the same claim. The Michigan Supreme Court denied his

application on February 26, 2010.  ECF No. 8 at 5; ECF No. 18-19.

Petitioner filed a habeas petition in this Court on February 17, 2011 (ECF No. 1), along with a motion to stay the habeas proceedings since he had an outstanding motion in the trial court that raised claims not yet exhausted for purposes of the habeas proceedings (ECF No. 2).  The habeas court granted the motion to stay.  ECF No. 4.  Petitioner filed an amended habeas application in federal court on September 7, 2012 (ECF No. 8), which the habeas court granted by re-opening his case on January 17, 2013 (ECF No. 10).  After re-opening his habeas case, Petitioner filed a motion for relief from judgment in the trial court on May 2, 2013.  ECF No. 18-13.  On October 22, 2013, Petitioner filed a supplemental motion for relief from judgment.  ECF No. 18-14 at 1. On March 28, 2014, the trial court denied Petitioner's motion and supplemental motion for relief from judgment.[1] ECF No. 18-16. At no time did Petitioner file an appeal in the United States Supreme Court.

Petitioner maintains that his convictions were based on violation of his federal rights. Petitioner sets forth the following claims for relief in his habeas application:

> I. The prosecution abused its discretion by charging defendant in the alternative with both bank robbery and armed robbery.
>
> II. Petitioner Harold Thomas was denied a fair trial and due process of law, in violation of the United States Constitution VI, XIV Amendments and the legal principle of the US Supreme Court's myriad stare decisis when Petitioner Thomas' bench trial, conviction and sentence was conducted by a bias trial judge, whose impartiality might reasonably be called into question, because the trial judge necessarily had a prejudgment or preconceived notion of Petitioner Thomas' guilt of the charged offense due to his prior participation as a fact finder and initial decision maker, and because his mental

---

[1]In May of 2014, Petitioner filed a delayed appeal to the Michigan Court of Appeals. The outcome of that appeal was unknown at the time this amended habeas application was filed.

-2-

impartiality was negated by a barrage of evidence relating to alleged similar acts, uncharged crimes and bad man character testimony to the degree that any possible impartiality was nullified.

III. Petitioner Harold Thomas was denied a fair trial and due process of law, in violation of United States Constitution VI, XIV Amendments and the legal principle of the US Supreme Court in Santobello v. New York, 404 US 257; 92 S Ct 495 (1971), the prosecution and defense counsel breached the legal contract agreement that Petitioner Thomas would not be impeached with any reference to his prior record, imprisonment or current parole status if he testified for the defense, then proceeded to repeatedly impeach Petitioner Thomas with references to his imprisonment, current parole status and prior record.

IV. Petitioner Harold Thomas was denied a fair trial and due process of the law, in violation of the United States Constitution VI, XIV Amendments and the legal principle of stare decisis when the trial court repeatedly considered uncharged similar act crimes as substantive proof or constructive evidence of Petitioner Harold Thomas' guilt of the charged offenses of armed robbery or bank robbery without affording Petitioner Thomas the required Huddleston v. United States, 486 US 681; 108 S Ct 1496 (1988)/People v. Vandervliet, 444 Mich 52, 89 (1993) evidentiary hearing.

V. Petitioner Thomas was denied a fair trial, due process of law, the right to effectively confront, cross-examine or impeach Detective Litteracki [sic] and the Westland Police, in violation of the United States Constitution VI, XIV Amendments and the legal principle of the US Supreme Court in Crawford v. Washington, 541 US 36; 124 S Ct 1354 (2004) when Detective James Dziedzic's testimonial hearsay was used to interpret at length Detective Litterack's [sic] report and the Westland Police's 11/24/07 accident report.

VI. Michigan's application of MCL 767.39 [aiding and abetting statute] an unconstitutional application that resulted in inherent prejudices to Petitioner Harold Thomas, thereby denying Harold Thomas Due Process of law, in violation of the V, VI, XIV Amendment of the United States Constitution when Michigan's application of MCL 767.39: (1) disregards the plain unambiguous language of MCL 767.39 and the doctrine of statutory construction; (2) usurps and ignores previous Michigan stare decisis deemed to have been the final authority; (3) deprives any Petitioner subject to

Michigan's misapplication of MCL 767.39 of the right to know the nature of the charge; (4) precludes the Petitioner from presenting the defense of merely present.

VII. Petitioner Harold Thomas was denied a fair trial and due process of law, in violation of the United States Constitution VI, XIV Amendments and the legal principle of the US Supreme Court in Strickland v. Washington, 466 US 668; 104 S Ct 2052 (1984) and/or United States v. Cronic, 466 US 648; 104 S Ct 2039 (1984) due to trial counsel's cumulative incompetent errors (whether by commission or omission) as alphabetized below when those incompetent errors were prejudicial to the defense when trial counsel:

    A. Coerced Petitioner Thomas to waive a jury trial and take a bench trial before a bias[ed] judge, who prejudged the case and had obvious preconceived notions of Petitioner Thomas' guilt to the charged offenses due to his prior participation as an [sic] factfinder or initial decision maker.

    B. Failed to file a motion for the biased judge to recuse on the ground that under the circumstances of the case the trial judge's impartiality might reasonably be questioned.

    C. Failed to object to the prosecution's and trial court's breaching the contractual agreement made between the parties that Petitioner Thomas would not be impeached by any reference to his prior record, imprisonment or current parole status, but was the first one to breach the agreement. See TT 1, p. 12, LL 12-3.

    D. Failed to file a motion for a People v. Vandervliet, 444 Mich 52 (1993)/Huddleston v. United States, 485 US 681; 108 S Ct 1496 (1988) evidentiary hearing to preclude bad man character, uncharged crimes, similar act crimes evidence from pervading and prejudicing the trial proceedings.

    E. Failed to object to multiple or cumulative instances of prosecutorial misconduct as set forth in habeas ground seven.

    F. Failed to conduct numerous types of pre-trial investigations, including potential defense favorable witnesses and statutes revolving or relevant to the defense.

G. Failed to endorse a defense favorable expert witness [a chirographer (handwriting expert)] who would have rebutted (if not exposed perjury by the state's key witness Keyana Pettus) the state's key witness and alleged co-defendant's testimony when she testified Petitioner Thomas wrote the robbery notes she gave the tellers in the uncharged similar act [of] Farmington Hi[ll]s and the current conviction [of the] Southfield bank robberies.

H. Failed to impeach the state's key witness (Keyana Pet[t]us) with her conflicting (if not irreconcilable) extrajudicial, custodial interrogation statements, and with her obvious motive, interest, bias to testify to the satisfaction of the prosecution and to lie about Petitioner Thomas' involvement in any bank robberies.

I. Failed to object to the state's deliberate, perjurious and fraudulent misrepresentation of the date of the Farmington Hi[ll]s bank robbery.

K.[2] Failed to call parole officer Hughes (a favorable defense witness) as a rebuttal witness to establish the fact that on the actual date [11/8/07 instead of 11/7/07] and time of the Farmington Hi[ll]s bank robbery [that] Pettus testified Petitioner Thomas was involved in with her [despite the fact that] Petitioner Thomas was in an interview conducted by his parole officer at the parole office.

L. Failed to present defense supporting DVDs of the custodial interrogation of Pettus and documents so damaging to the prosecution's theory of the charged offenses of armed robbery, bank robbery and aiding and abetting that those charges against Petitioner Thomas would have been dismissed or acquittal would have resulted.

M. On cross-examination elicited testimony from a state witness that equated to a Miranda-less (TT, 11, p. 88, LL 7-8), Edwards v. Arizona, 451 US 477, 101 S Ct 1880 (1981) violation confession of Petitioner Thomas being used to establish every element of the charged offenses.

_____

[2]Petitioner did not have a sub-claim "J" listed in his amended habeas petition. ECF No. 8 at 19.

N. Provided (thus introduced) the highly prejudicial and irrelevant nude or sexual photographs of Petitioner Thomas and Keyana Pettus thereby establishing Petitioner Thomas was at least guilty of CSC 4th degree or 1st degree.

O. Failed to know the laws centering around the case where those same laws allowed a chirographer to be endorsed as a defense witness to establish the mere presence defense.

P. Failed to request an instruction on merely presence pursuant to CJI2d 8.5.

VIII. Petitioner Harold Thomas was denied a fair trial and due process of law, in violation of the United States Constitution VI, XIV Amendments and the legal principle of <u>Berger v. United States</u>, 295 US 78; 55 S Ct 692 (1935) et all due to cumulative prosecutorial misconduct.

IX. Petitioner Thomas was denied the right to an appeal of right and the effective assistance of appellate counsel, in violation of the United States Constitution XIV Amendment and the legal principle of the myriad of US Supreme Court stare decisis when he was denied accurate transcripts because segments of the trial transcripts (basic tools of an appeal) were altered to reflect testimony diverse from the actual trial testimonies, thereby constructively constituting no transcript at all.

X. Petitioner Harold Thomas was denied a fair trial and due process of law, in violation of the United States Constitution VI, XIV Amendments and the legal principle of the US Supreme Court's myriad stare decisis when he was charged with and convicted of the general offense armed robbery instead of the more specific offense of bank robbery.

XI. The state trial court's judicial determination was an unreasonable determination in light of the evidence presented in the state court when the trial judge determined Pettus' inconsistent (if not perjurious) extra-judicial statements made during police interrogation were <u>minor</u> when the <u>statements</u> compared to Pettus' trial testimony reflect those inconsistencies were significant.

XII. The state's adjudication that the prosecution <u>did not</u> abused [sic] its discretion by charging defendant in the alternative with both bank

> robbery and armed robbery, in violation of the United States Constitution VI, XIV Amendments and legal principle of the US Supreme Court in myriad stare decisis is an adjudication that was contrary to US Supreme Court stare decisis.

ECF No. 1 at 4; ECF No. 8 at 7-25. Respondent filed an Answer in Opposition to Petitioner's habeas application on June 5, 2014. ECF No. 17. Petitioner filed a Reply on August 27, 2015. ECF No. 24. The matter is now ready for a decision.

## I.

Petitioner filed this petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996. PUB. L. 104-132, 110 STAT. 1214 (AEDPA); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002) (noting that AEDPA prevents federal habeas "retrials" and ensures state convictions are made under state law). 28 U.S.C. § 2254(d) provides that any habeas application by a person in state custody shall not be granted in regards to any claim that has previously been adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

This Court may only consider "clearly established holdings" of the Supreme Court, not lower federal courts, in analyzing a petitioner's claim under § 2254. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). A decision of the state court may only be overturned if: (1) it applies a rule contradicting Supreme

Court governing law, (2) it contradicts a set of facts materially indistinguishable from a Supreme Court decision, (3) it unreasonably applies correct Supreme Court precedent to the facts of the case, (4) it unreasonably extends Supreme Court legal principles where it should not apply, or (5) it unreasonably refuses to extend Supreme Court legal principle where it should apply. *Bailey*, 271 F.3d at 655; *see also Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

   A federal habeas court may not find a state adjudication to be "unreasonable" simply because that court decides, in its own judgment, that the relevant state decision applied federal law incorrectly. *Williams*, 529 U.S. at 410-11 (noting that it must instead determine if the state court's application of clearly established federal law was "objectively unreasonable"). This Court defers to state court decisions when the state court addressed the merits of petitioner's claim. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *see Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (allowing review of habeas application *de novo* when state court clearly did not reach the question). When applying AEDPA to state factual findings, factual issues by state courts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429.

   After applying the standards under AEDPA to Petitioner's case, this Court concludes that Petitioner has not provided clear and convincing evidence that the state court improperly applied clearly established federal law to the facts of Petitioner's case.

II.

   Petitioner argues that habeas relief is warranted due to violations of his Fifth, Sixth, and Fourteenth Amendment rights.

-8-

### A. Prosecutor's Charging Decision

Petitioner raises three claims relating to the prosecutor's improper decision to charge him with both armed robbery and bank robbery.  The three claims touching on this issue are: claim I (prosecutor's improper charging decision); claim X (improper conviction of general armed robbery rather than more specific bank robbery); and claim XII (state's improper decision that prosecutor did not abuse charging power by charging petitioner with armed and bank robbery).

While Petitioner currently raises these claims as violations of his constitutional rights, these are clearly claims alleging that the state courts misapplied state law (which is discussed by the Michigan Court of Appeals). Federal courts cannot intervene on the basis of perceived errors of state law.  *Wilson v. Corcoran*, 562 U.S. 1, 1 (2010); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Therefore, these claims are not cognizable on habeas review.

Even if these three claims were cognizable on habeas review, they still do not warrant habeas relief.  "A prosecutor has broad discretion in deciding what charges to pursue, and the prosecutor's charging decisions are generally not subject to review by the courts." *Norris v. Preselnik*, No. 12-14915, 2014 WL 943096, at *20 (E.D. Mich. Mar. 11, 2014); *Times v. Woods*, No. 12-CV-15550, 2013 WL 5488449, at *14 (E.D. Mich. Oct. 2, 2013) (same). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in his [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *United States v. Goodwin*, 457 U.S. 368, 368-69 (1982); *Norris*, 2014 WL 943096, at

*20 (quoting *Bordenkircher*, 434 U.S. at 364).

The last court to review the substance of these issues on the merits was the

Michigan Court of Appeals in its decision denying Petitioner's direct appeal. *People v. Thomas*,

No. 287382, 2009 WL 3199543, at *1 (Mich. Ct. App. Oct. 6, 2009). The court denied

Petitioner's claim for the following reasons:

> On appeal, defendant argues that he should have been charged only with bank robbery because that statute is more specific. He relies on case law holding that where two statutes prohibit the same conduct, the defendant must be charged under the more specific, and more recently enacted, statute. See *People v. Patterson*, 212 Mich. App. 393, 394-395; 538 NW2d 29 (1995). However, if two statutes prohibit different conduct (i.e., an additional element is required to convict the defendant of one crime, but not the other), the prosecutor has the discretion to charge under either statute. *People v. Werner*, 254 Mich. App. 528, 536-537; 659 NW2d 688 (2002); *People v. Peach*, 174 Mich. App. 419, 423; 437 NW2d 9 (1989).
>
> With respect to armed robbery and bank robbery, this Court observed in *People v. Avery*, 115 Mich. App. 699, 701-702; 321 NW2d 779 (1982):
>
>> The essential elements of armed robbery consist of an assault, a felonious taking of property from the victim's person or presence, and that the defendant be armed with a weapon. In contrast, the statute on bank robbery does not require that a defendant be armed, nor does it require an assault or felonious taking. In addition, the statute on bank robbery requires that there be an intent to steal from a building, bank, safe, or other depository of money to establish a violation whereas the statute on armed robbery requires the felonious taking to be from a person or in his presence.
>>
>> There will be times when the statute on armed robbery and the statute on bank robbery will overlap. However, not every violation of the statute on bank robbery will result in a violation of the statute on armed robbery. This is not a case of the Legislature carving out an exception to a general statute and providing a lesser penalty for a more specific offense, in

> which case the prosecutor would have to charge the defendant under the statute fitting the particular facts. The crimes of armed robbery and bank robbery involve different elements and carry the same possible sentence. [Citations omitted.]
>
> For the reasons noted and under the facts of that case, the *Avery* Court concluded the prosecutor had the discretion to charge either bank robbery or armed robbery. *Id.* at 702.
>
> Defendant attempts to distinguish *Avery* arguing that the Legislature has since changed the elements of the armed robbery statute. We disagree. Defendant notes that under the current version of MCL 750.529 an individual can be found guilty of armed robbery even if he is no longer armed with a weapon; consequently, the rationale of *Avery* no longer applies. But, while the elements for armed robbery and bank robbery might overlap more closely than before the 2004 amendment to MCL 750.529, the crimes still have distinct elements. Armed robbery continues to require a theft from a person while bank robbery does not. Bank robbery can include, but does not require, an assault. MCL 750.531. Defendant has not shown that the amended armed robbery statute changes the outcome of the *Avery* analysis.
>
> In this case, there was factual support for both charges, and because the prosecution had the discretion to charge defendant with either bank robbery or armed robbery, there was no plain error in charging defendant in the alternative with both offenses.

*Thomas*, 2009 WL 3199543, at **1-2. The Michigan Court of Appeals' decision is thorough and complete, and does not improperly apply federal law to the facts of Petitioner's case. *See Bailey*, 271 F.3d at 655. Here, the prosecutor had sufficient probable cause to believe that Petitioner committed armed robbery *and* bank robbery. *Norris*, 2014 WL 943096, at *20. Moreover, Petitioner has not shown by clear and convincing evidence that the decision of the Michigan Court of Appeals was contrary to any Supreme Court precedent. *See Lancaster*, 324 F.3d at 429. Thus, Petitioner is not entitled to habeas relief on claims I, X, or XII.

-11-

## B. Impartial Judge

In Petitioner's claim II, he states that he was denied the right to a fair trial and due process of the law because the trial judge was biased against him due to the knowledge he acquired when making pre-trial decisions in Petitioner's case.  ECF No. 8 at 16.  Specifically, Petitioner states that the judge's pre-trial knowledge of Petitioner's criminal record, uncharged offenses, parole status, and similar acts evidence, combined with the fact that this judge presided over co-defendant Pettus' guilty plea,  rendered him an impartial adjudicator in this case.

Due Process requires a fair trial before a judge without actual bias against the defendant or an interest in the outcome of his particular case. *Bracy v. Gramley*, 520 U.S. 899, 899 (1997); *see also Railey v. Webb*, 540 F.3d 393, 399 (6th Cir. 2008) (citing *In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of *actual* bias in the trial of cases." (emphasis added)). A judge should be disqualified for "bias, [] a likelihood of bias[,] or [even] an appearance of bias." *Railey*, 540 F.3d at 399-400 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 588 (1964)). This is because "our system of law has always endeavored to prevent even the probability of unfairness." *Id.* (quoting *Murchison*, 349 U.S. at 136).

Notably, however, "most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard." *Bracy*, 520 U.S. at 904 (citing *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 828 (1986)).

> [I]t is also clear that judicial disqualification based on a likelihood or an appearance of bias is not always of constitutional significance; indeed, "most matters relating to judicial disqualification d[o] not rise

to a constitutional level." *Fed. Trade Comm'n v. Cement Inst.*, 333 U.S. 683, 702, 68 S. Ct. 793, 92 L. Ed. 1010 (1948) (citing *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S. Ct. 437, 71 L. Ed. 749 (1927) ("All questions of judicial qualification may not involve constitutional validity."); *see also Bracy v. Gramley*, 520 U.S. 899, 904, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997) ("Of course, most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause ... establishes a constitutional floor, not a uniform standard. Instead, these questions are, in most cases, answered by common law, statute, or the professional standards of the bench and bar."). In only two types of cases has the Supreme Court actually held that something less than actual bias violates constitutional due process – (1) those cases in which the judge "has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion," *Tumey*, 273 U.S. 523 (subsequently expanded to include even indirect pecuniary interest); and (2) certain contempt cases, such as those in which the "judge becomes personally embroiled with the contemnor," *Murchison*, 349 U.S. at 141 (subsequently clarified to involve cases in which the judge suffers a severe personal insult or attack from the contemnor).

The Court has also acknowledged four types of cases that, although they present prudent grounds for disqualification as a matter of common sense, ethics, or "legislative discretion," generally do not rise to a constitutional level-"matters of [1] kinship, [2] personal bias, [3] state policy, [and][4] remoteness of interest." *Tumey*, 273 U.S. 523; *accord Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820, 106 S. Ct. 1580, 89 L. Ed. 2d 823 (1986). But, in the 81 years since *Tumey*, the Court has yet to expound upon this general statement regarding the presumptive constitutional indifference to these types of issues.

*Railey*, 540 F.3d at 400. Summarily, for recusal to be required, a "judge's prejudice or bias must be personal or extrajudicial." *Horowitz v. Harry*, No. 06-13770, 2009 WL 2143797, at *17 (E.D. Mich. July 13, 2009) (quoting *United States v. Jamieson*, 427 F.3d 394, 405 (6th Cir. 2005)). Personal bias is a prejudice that may arise from a source outside of the proceedings, for example. *Id*.; *see United States v. Hartsel*, 199 F.3d 812, 820-21 (6th Cir. 1999) ("The critical test is whether the alleged bias 'stem[s] from an extrajudicial source and result[s] in an opinion on the

merits on some basis other than what the judge learned from his participation in the case.'"
(citations omitted)).

        Here, Petitioner claims that the trial judge was biased because he presided over
Petitioner's pre-trial hearings (which included information pertaining to uncharged robberies and
similar bad acts) and Pettus' guilty plea.  However, this information was acquired during court
proceedings and was not obtained by outside sources.  Moreover, Petitioner has not demonstrated
that the acquired information made the judge biased against him.  As the trial court noted in its
decision denying Petitioner's motion for relief from judgment, the other acts evidence was
properly admitted and was not improperly relied upon by the trial judge. ECF No. 18-16 at 7-8.
For example, the summary of the judge's verdict does not indicate that he weighed this
information heavily (or at all). ECF No. 18-8; *see* ECF No. 18-16 at 7-8.  Instead, the trial judge
appeared to have relied most heavily on the credibility of the witnesses rather than Petitioner's
prior acts. ECF No. 18-8 at 11-17; *see Hartsel*, 199 F.3d at 820-21 (noting the question of bias
comes from whether the information gathered is from hearings or extrajudicial sources).

        As a result, Petitioner has not shown that the judge was biased against Petitioner
or that he harbored a preconceived notion that Petitioner was guilty prior to trial. Therefore,
Petitioner's claim II fails.

### C. Breach of Court Order

        Petitioner's claim III states that he was denied due process and a fair trial when
the prosecution and defense attorney impeached Petitioner's credibility by referencing his prior
record, imprisonment, and parole status. ECF No. 8 at 16-17.  In support of this claim, Petitioner
attached the trial court's order stating that "[u]pon oral argument, April 30, 2008[,] and the court

-14-

being advised on the premises, It is Hereby Ordered that defendant's prior record shall be

suppressed [sic] and shall not be used for impeachment if the defendant testifies in his defense."

ECF No. 8 at 28.

Notably, however, the extraordinary remedy of habeas corpus lies only for a

violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v.*

*McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly

excluded under state law "is no part of the federal court's habeas review of a state conviction

[for] it is not the province of a federal habeas court to re-examine state-court determinations on

state-law questions."  *Id.* at 67-68.

Rather, "[i]n conducting habeas review, a federal court is limited to deciding

whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.

State-court evidentiary rulings cannot rise to the level of due process violations unless they

offend some principle of justice so rooted in the traditions and conscience of our people as to be

ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation

omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329

F.3d 496, 512 (6th Cir.), *cert. denied*, 540 U.S. 930 (2003).  "[C]ourts have defined the category

of infractions that violate fundamental fairness very narrowly."  *Bugh*, 329 F.3d at 512 (internal

quotations and citations omitted).

Here, Petitioner's claim is an evidentiary issue that is not cognizable on habeas

review. Even if it were, Petitioner has not shown that his claim has merit.  For example, in

denying Petitioner's motion for relief from judgment, the trial court stated that:

[T]he evidence of the prior robberies was probative of Defendant's

-15-

> intent to rob the Franklin Bank, his knowledge was about the robbery, and his scheme, plan, or system of committing the robberies. While any relevant evidence will be damaging to some extent, *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), Defendant has not shown that the evidence was unfairly prejudicial, especially given the fact that this case was tried before the bench, rather than a jury. *People v. Wofford*, 196 Mich. App 275, 282; 492 NW2d 747 (1992) ("Unlike a jury, a judge is presumed to possess an understanding of the law, which allows him to understand the difference between admissible and inadmissible evidence or statements of counsel.").

ECF No. 18-16 at 6. The prior acts Petitioner references in claim III were not used to impeach him on the stand, but rather to show his plan or scheme for committing the robbery in question (which refutes his impeachment allegation).

Moreover, Petitioner conceded in his motion for relief from judgment that the "nature of the crimes for which [he] had been previously convicted of was not revealed," and that only his parole status was admitted during trial. ECF No. 18-13 at 43. Therefore, since Petitioner has not shown that his prior record, imprisonment, or parole status were used to impeach him on the stand, or used improperly, this claim fails.

### D. Uncharged Similar Acts Evidence

Petitioner's claim IV states that he was denied due process of the law and a fair trial when the court considered "uncharged similar acts crimes as substantive proof or constructive evidence" of Petitioner's guilt without holding an evidentiary hearing. ECF No. 8 at 17. Petitioner did not define what the "uncharged similar acts crimes" were in his case; however, it is reasonably likely that he is referring to the previous uncharged bank robberies (i.e., the Farmington Hills and Keego Harbor robberies).

Here, Petitioner raises this prior acts evidence claim as a due process and fair trial

claim under the United States Constitution; however, it is effectively a state law evidentiary claim. Federal courts have no power to intervene on the basis of perceived error of state law. *Wilson*, 562 U.S. at 1, 5; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41. Consequently, Petitioner's claim IV is not cognizable on habeas review.  Even if it were cognizable on review, the trial court (in its denial of Petitioner's motion for relief from judgment) determined that it was permissible to admit the prior bad acts evidence at Petitioner's trial:

> Defendant next argues that evidence of the prior uncharged robberies was improperly admitted at trial under MRE 404(b) . . . . Under MRE 404(b)(1), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. *People v VanderVliet*, 444 Mich 52, 62; 508 NW2d 114 (1993). Such evidence may be admissible, however, for other purposes such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident. MRE 404(b)(1); *VanderVliet*, *supra*. "Relevant other acts evidence does not violate Rule 404(b) unless it is offered solely to show the criminal propensity of an individual to establish that he acted in conformity therewith." *VanderVliet*, *supra* at 65. Here, where the defense theory was that Defendant did not know that Pettus intended to rob the Franklin Bank when he drove her there, the evidence of Defendant's participation in previous bank robberies with Pettus was relevant to proving his intent to commit the Franklin Bank robbery, his knowledge about the robbery, and a scheme, plan, or system in doing an act. Thus, the evidence of the prior robberies was relevant and was admitted for a proper purpose.

ECF No. 18-16 at 5-6 (going on to explain that the probative value of the other acts evidence outweighed its prejudicial nature).  The trial court's conclusions are in line with the Federal Rules of Evidence section 404(b), even though such an evidentiary issue does not rise to a constitutional level.  FRE 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."); *see also Bey v.*

-17-

*Bagley*, 500 F.3d 514, 523 (6th Cir. 2007) (noting other acts evidence was properly admitted, and petitioner's disagreement with that is not cognizable on habeas review since it does not involve a "constitutional dimension.").  Consequently, Petitioner's claim IV fails.

### E. Confrontation Clause

In Petitioner's claim V, he states that he was denied a fair trial and the "right to effectively confront, cross-examine or impeach Detective Litteracki [sic] and the Westland Police . . . when Detective James Dziedec's [sic] testimonial hearsay was used to interpret at length Detective Litterack's [sic] report and the Westland Police's 11/24/07 accident report." ECF No. 8 at 9, 13.

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend VI; *Pointer v. Texas*, 380 U.S. 400, 406 (1965) (noting the Confrontation Clause includes the right to cross-examine those witnesses). Generally, this means that testimonial out-of-court statements by witnesses are barred under the Confrontation Clause unless witnesses are unavailable and defendants had a prior opportunity to cross-examine witnesses, regardless of whether such statements are deemed reliable by court.  *Crawford v. Washington*, 541 U.S. 36 (2004) (abrogating *Ohio v. Roberts*, 448 U.S. 56 (1980)).  Notably, however, this right is not absolute and it may be waived.  *Jordan v. Warden, Lebanon Correctional Inst.*, 675 F.3d 586, 594 (6th Cir. 2012) ("The Constitution guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'") (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original)); *see also Barber v. Page*, 390 U.S. 719, 725 (1968) ("[T]his Court's definition of a waiver [is] 'an

-18-

intentional relinquishment or abandonment of a known right or privilege.'") (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

In general, "[t]here is a presumption against the waiver of constitutional rights . . . and for a waiver to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.'" *Brookhart v. Janis*, 384 U.S. 1, 4 (1966) (quoting *Johnson*, 304 U.S. at 464). In order for a waiver to be valid, the record must clearly show that the accused comprehends the nature of the waived right and agrees to its waiver. *Faught v. Cowan*, 507 F.2d 273, 280 (6th Cir. 1974).

Here, it is clear from the record that Petitioner, through his attorney, waived his right to confront Detective Literacki regarding his police report[3]:

> [During recross-examination of Detective Dziedzic]
>
> <u>Defense Attorney</u>: Are you going to call Litteracki [sic]?
>
> <u>Prosecutor</u>: I didn't plan on it. If you want I'd be happy to get him here.
>
> <u>Defense Attorney</u>: No. If you're not, I'll just question him [Detective Dziedzic] about it.

ECF No. 18-4 at 97.  In addition, Petitioner (again, through his attorney) waived his right to confront the author of the Westland accident report when his attorney questioned Detective Dziedzic (on recross-examination) about the accident report.  ECF No. 18-4 at 118-19 (showing that the defense attorney questioned Detective Dziedzic about the report). Consequently, Petitioner's Sixth Amendment right to confront the Westland police report author and Detective

---

[3]This report was written and logged by Detective Literacki. ECF No. 8 at 30. The report states that Detectives Dziedzic and Literacki both interviewed Keyana Pettus about the robbery. ECF No. 8 at 30-32.

Literacki were properly waived, as clearly demonstrated through the trial transcript.

Nonetheless, even if Petitioner did not waive this right, the defense attorney's decision not to call Detective Literacki and the author of the Westland police report to testify was harmless error. On habeas review, a court must assess harmlessness under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), regardless of whether the state appellate court recognized the error and reviewed it for harmlessness. *See Hargrave v. McKee*, 248 F. App'x 718, 738 (6th Cir. 2007) (citing *Fry v. Pliler*, 551 U.S. 112, 121-22 2328 (2007)); *see also Vasquez v. Jones*, 496 F.3d 564, 574-75 (6th Cir. 2007). The *Brecht* standard requires the Court to consider whether the constitutional error in the state criminal trial had a "substantial and injurious effect" on the result. In determining whether the restriction was harmless, a court must consider a number of factors, "'includ[ing] the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.'" *Hargrave*, 248 F. App'x at 728 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

Here, it was harmless not to include testimony from Detective Literacki or the Westland police report author. This is because such additional testimony would be cumulative given Detective Dziedzic's sufficient testimony on these two reports. Moreover, the prosecution's case was strong given the evidence against Petitioner, such as: Keyana Pettus' testimony as a co-defendant; the similarities between this robbery and the previously uncharged bank robberies (Farmington Hills and Keego Harbor); the super glue found in Petitioner's car

-20-

that was used to conceal Pettus' fingerprints during the robbery (which corroborated her testimony that Petitioner was involved in the robbery); and the fact that Petitioner fled from police after the robbery, showing his consciousness of guilt. ECF No. 9;  ECF No. 8 at 19. Therefore, given the evidence against Petitioner, and the fact that further testimony pertaining to Detective Literacki's report and the Westland police report would be cumulative, it follows that any failure to call these two witnesses was harmless (as it would not have bolstered Petitioner's defense). Thus, Petitioner's Confrontation Clause claim fails.

### F. Misapplication of Michigan Law

In Petitioner's claim VI, he alleges that the trial court wrongly applied MICH. COMP. LAW § 767.39 (aiding and abetting statute) to his case, resulting in violations of his Fifth, Sixth, and Fourteenth Amendment rights.  Specifically, Petitioner claims that the violations stemmed from the court's: (1) disregard of the plain language of the statute, and misapplication of the doctrine of statutory construction, and (2) non-application of Michigan case law, which resulted in Petitioner not knowing the nature of the charge against him and precluded him from presenting the defense of "merely present."

Despite Petitioner's concerns, this claim is not cognizable on habeas review.  As previously outlined, a habeas court is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 68. Federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 1, 5; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41. Since Petitioner's claim rests entirely within the state court's application of state law, this claim is not cognizable for habeas review.

### G. Ineffective Assistance of Counsel

In Petitioner's claim VII, he alleges that his trial counsel was ineffective due to several "cumulative incompetent errors," such as: waiving a jury trial, failure to motion for judicial recusal; failure to object to the prosecutor's breach of the suppression "contract"; failure to file a motion to preclude uncharged crimes, bad character evidence, and similar acts evidence from being admitted; failure to object to multiple incidents of prosecutorial misconduct; failure to conduct pre-trial investigations that would help in Petitioner's defense; failure to obtain a handwriting expert; failure to impeach Keyana Pettus; failure to object to the prosecutor's misrepresentation of the Farmington Hills bank robbery; failure to call parole officer Hughes as an alibi witness for the Farmington Hills robbery that Pettus testified about; failure to present supporting DVDs of the Pettus interrogation; use of Petitioner's *Miranda*-less confession when cross examining a state witness; use of prejudicial sexual pictures of Petitioner and Pettus; failure to know the laws of the case (such as the "mere presence" defense); and failure to request an instruction on the mere presence defense.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. Where counsel's performance did not fall below an objective standard of reasonableness, the court need not reach the question of prejudice. *See United States v. Foreman*, No. 01-3892, slip op. at 8-9 (6th Cir. Mar. 25, 2003).

A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189-190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 89; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102). Where a prisoner has raised multiple claims of ineffective assistance of counsel and the state appellate courts have neglected to address one of the claims, the habeas court's review on the performance prong is *de*

-23-

*novo*.  *See Daniel v. Curtin*, 499 Fed App'x 400, 404 (6th Cir. 2012). Petitioner's claims of ineffective assistance of counsel fail for the following reasons.

### i. Bench Trial Coercion

To the extent that Petitioner claims his counsel was ineffective for coercing him into waiving his right to a jury trial, this claim fails.  Petitioner clearly indicated on the record before the trial court that he intended to waive his right to a jury trial:

<u>Court</u>: Tell us your name, sir?

<u>Defendant</u>: Harold Thomas.

<u>Court</u>: And you understand you're the defendant in this case?

<u>Defendant</u>: Yes, sir.

<u>Court</u>: And do you understand that you have an absolute right to have a trial by jury?

<u>Defendant</u>: Yes, sir.

<u>Court</u>: And that would mean you would have the decision in this case rendered by 12 people who would sit in that jury box, listen to all the evidence, argument and my instructions on the law and then would have to decide unanimously whether or not the prosecutor had proven you had committed the crime with which you are charged beyond a reasonable doubt. Do you understand that?

<u>Defendant</u>: Yes, sir.

<u>Court</u>: Now you also have the right if you want to to waive the right to have your case tried by a jury and you could have your case tried just by me. Do you understand that?

<u>Defendant</u>: Yes, sir.

<u>Court</u>: Now I've been told that you want to waive your right to have your case tried to the jury and rather have it tried by me. Is that right?

<u>Defendant</u>: Yes, sir.

<u>Court</u>: Now has anybody threatened you in any way or made any promises to you in any way to get you to give up your right to have your case tried to the jury?

<u>Defendant</u>: No, sir.

<u>Court</u>: Are you doing that out of your own free will?

<u>Defendant</u>: Yes, sir.

<u>Court</u>: Now do you have any questions of me regarding your rights in this matter?

<u>Defendant</u>: No, sir.

<u>Court</u>: Do you feel that you've discussed this fully and completely with your attorney?

<u>Defendant</u>: Yes, sir.

<u>Court</u>: And you've taken into account any advice he may have given you on this?

<u>Defendant</u>: Yes, sir.

<u>Court</u>: You're satisfied with the advice he's given you on this issue?

<u>Defendant</u>: Yes, sir.

ECF No. 18-3 at 4-6. The record refutes Petitioner's contention that he was coerced into waiving his right to a jury since he said that he was neither threatened nor promised anything if he gave up this right. Moreover, after the above-mentioned colloquy with the trial judge, Petitioner read into the record the "waiver of jury trial" form that indicated he voluntarily waived his right to a jury and preferred to be tried by the judge. ECF No. 18-3 at 6. Even the trial court noted (in its decision denying Petitioner's motion for relief from judgment) that Petitioner "knowingly and

voluntarily waived his right to a jury trial." ECF No. 18-16 at 15. Therefore, despite Petitioner's

conclusory allegation that he was coerced into waiving his right to a jury trial, the record clearly

refutes this assertion.  Consequently, this ineffective assistance of counsel claim fails.

### ii. Judicial Recusal

Petitioner's next claim alleges that counsel was ineffective for failing to file a

motion to have the trial judge recuse himself from Petitioner's case.  ECF No. 8 at 18.  The state

trial court addressed this issue in its denial of Petitioner's motion for relief from judgment:

> To the extent Defendant argues that defense counsel was ineffective
> because he allowed Defendant to be tried by a judge that was aware
> of his prior record, he has shown no error. Defendant knowingly and
> voluntarily waived his right to a jury trial. Furthermore, Defendant
> has not shown that the court used his parole status or criminal history
> for any improper purpose. In a bench trial, it is presumed that the trial
> court follows the law and understands the difference between
> admissible and inadmissible evidence. *People v Oliver*, 170 Mich
> App 38, 49; 427 NW2d 898 (1988). Unlike a jury, the trial court
> possesses an understanding of the law that enables it to ignore
> evidentiary errors and decide a case based solely on the evidence
> properly admitted at trial. *People v Taylor*, 245 Mich App 293, 305;
> 628 NW2d 55 (2001). Defendant has not shown that defense
> counsel's representation constituted ineffective assistance of counsel.

ECF No. 18-16 at 15.  An attorney's failure to make a frivolous or meritless motion does not

constitute ineffective assistance of counsel.  *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir.

2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F.

App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000). As

the state court eluded to above, filing a motion to recuse a judge that is presumed to be capable of

following the law and evaluating evidence would be frivolous and meritless. Consequently,

Petitioner has not demonstrated that his trial attorney's failure to file a motion for judicial recusal

constituted deficient performance under the two-prong *Strickland* test.  Therefore, this ineffective assistance of counsel claim fails.

### iii. Breach of Suppression Order

Next, Petitioner claims that his trial counsel was ineffective when he failed to object to the prosecution's (and trial court's) breach of the suppression order that stated Petitioner would not be impeached by his prior record, imprisonment, or parole status if he took the stand.  However, Petitioner has not provided or referred to any instances in the record where his attorney should have objected.

Furthermore, the state trial court noted (in its decision denying Petitioner's motion for relief from judgment) that, "[t]he substance of Defendant's criminal record was never admitted into evidence or mentioned by counsel." ECF No. 18-16 at 15. Therefore, Petitioner has failed to show what his attorney should have objected to during trial, or that his attorney's failure to object prejudiced the outcome of his case.

Moreover, great deference is afforded to an attorney's decisions relating to trial strategy, such as choosing when to object.  *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight."); *see, e.g., Lucas v. O'Dea*, 179 F.3d 412 (6th Cir. 1999) ("'Only in a rare case' will a court find ineffective assistance of counsel based upon a trial attorney's failure to make an objection . . . .") (citation omitted); *Butler v. Hosking*, 47 F.3d 1167 (Table), 1995 WL 73132, at *9 (6th Cir. 1995) (exemplifying that an attorney's failure to object to allegedly unfair statements by the prosecutor may have resulted because counsel "wanted to avoid highlighting those comments to the jury."); *Adams v. Bell*, No. 1:06-CV-629, 2009 WL 2515709, at *8 (W.D. Mich.

Aug. 14, 2009) ("Trial counsel's failure to object is not usually deficient performance for

purposes of an ineffective assistance of counsel claim.") (citation omitted). Thus, since

Petitioner has not overcome "the presumption that the challenged action might be considered

sound trial strategy," this claim fails. *United States v. Balboa-Gallardo*, No. 1:09-CR-225, 2012

WL 4923455, at *2 (W.D. Mich. Oct. 16, 2012) (citing *Strickland*, 466 U.S. at 689).

### iv. Motion to Preclude Evidence

Petitioner claims that his attorney was ineffective for failing to file a motion for an

evidentiary hearing to "preclude bad man character, uncharged crimes, [and] similar act crimes

evidence." ECF No. 8 at 18 (citing *Huddleston v. United States*, 485 U.S. 681, 686 (1988)

(weighing, under 404(b), whether similar acts evidence "is probative of a material issue other

than character.")). The state trial court addressed this issue in its denial of Petitioner's motion for

relief from judgment:

> Defendant next argues that evidence of the prior uncharged robberies
> was improperly admitted at trial under MRE 404(b), and that defense
> counsel was ineffective for failing to object to the admission of this
> evidence at trial. Under MRE 404(b)(1), evidence of other crimes,
> wrongs, or acts is not admissible to prove the character of a person in
> order to show that the person acted in conformity therewith. *People
> v VanderVliet*, 444 Mich 52, 62; 508 NW2d 114 (1993). Such
> evidence may be admissible, however, for other purposes, such as
> proof of motive, opportunity, intent, preparation, scheme, plan, or
> system in doing an act, knowledge, identity, or absence of mistake or
> accident. MRE 404(b)(1); *VanderVliet*, *supra*. "Relevant other acts
> evidence does not violate Rule 404(b) unless it is offered solely to
> show the criminal propensity of an individual to establish that he
> acted in conformity therewith." *VanderVliet*, *supra* at 65. Here, where
> the defense theory was that Defendant did not know that Pettus
> intended to rob the Franklin Bank when he drove her there, the
> evidence of Defendant's participation in previous bank robberies with
> Pettus was relevant to proving his intent to commit the Franklin Bank
> robbery, his knowledge about the robbery, and a scheme, plan, or

-28-

> system in doing an act. Thus, the evidence of the prior robberies was
> relevant and was admitted for a proper purpose.

ECF No. 18-16 at 5-6.  As the trial court noted, the admission of these other uncharged offenses

into evidence was appropriate since, rather than showing Petitioner's bad character, it showed

evidence of a common plan or scheme.  As such, it was not deficient performance for trial

counsel not to file a motion to exclude this information from evidence since such a motion would

be meritless.  *See Smith* , 591 F.3d at 523; *O'Hara*, 499 F.3d at 506; *Chegwidden*, 92 F. App'x at

311; *Harris*, 204 F.3d at 683. Moreover, evidentiary issues are not cognizable on habeas review.

*See Seymour*, 224 F.3d at 552 (noting state-court evidentiary rulings are not constitutional

violations unless they meet specific criteria). Therefore, Petitioner has not shown that his counsel

was ineffective, or that he is entitled to relief on this claim, meaning this claim also fails.

### v. Prosecutorial Misconduct Objections

Petitioner next claims that his counsel was ineffective when he did not object to

"multiple or cumulative instances of prosecutorial misconduct."  ECF No. 8 at 18-19.  The

claims of prosecutorial conduct that Petitioner refers to are: (1) double jeopardy; (2) eliciting

false testimony from Pettus; (3) eliciting false testimony from Detective Dziedzic; (4) breach of

the suppression order; (5) misstating the date of the Farmington Hills robbery; (6) use of other

crimes evidence at trial; and (7) vouching for the credibility of the prosecutor's witnesses. ECF

No. 8 at 21-22.  This claim is similar to Petitioner's claim VIII, wherein he alleges that he was

denied a fair trial and due process due to "cumulative prosecutorial misconduct."[4]  ECF No. 8 at

---

[4]The prosecutorial misconduct raised in claim VIII is virtually identical to the claims raised in the
ineffective assistance of counsel section: (1) double jeopardy, (2) eliciting false statements from Pettus and Detective
Dziedzic about Petitioner's involvement in the Farmington Hills and Keego bank robberies, (3) breach of contract
agreement, (4) misstatement of the date of the Farmington Hills robbery, (5) using other crimes and "bad man
character" testimony, and (6) vouching for the credibility of the state's witnesses.  ECF No. 8 at 21-22.

21-22. Based on the similarities of these claims, both will be discussed in this section.

Due to the nature of these two claims, the Court will first determine if the prosecutor's conduct was appropriate; and if it was not, the Court will then decide whether counsel was ineffective for not objecting to the misconduct.

Allegations of prosecutorial misconduct go to the fairness of the trial rather than the culpability of the prosecutor. *Millender v. Adams*, 187 F. Supp. 2d 852, 874-75 (E.D. Mich. Feb. 8, 2002). If the prosecutor's conduct is so egregious as to render the trial fundamentally unfair, then Due Process has been violated. *Id.* (citing *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355-56 (6th Cir. 1993)). To make this determination, the court must first (1) "decide whether the challenged statements were improper," and (2) if they were, "whether the statements or remarks are so flagrant as to constitute a denial of due process and warrant granting a writ." *Id.* at 875. Factors to consider on habeas review are: "the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and . . . the strength of the competent proof against the accused." *Id.* (citing *Serra*, 4 F.3d at 1355-56).

Petitioner has not shown that the prosecutor acted unreasonably during trial. First, the state courts unanimously upheld the trial court's determination that it was not double jeopardy to charge Petitioner with both armed robbery and bank robbery, so long as Petitioner was only convicted of one (if any). ECF No. 18-7 at 13-15. In addition, Petitioner has not shown that the prosecutor intentionally elicited false testimony from state witnesses. In fact, any "lies" that Pettus, or other witnesses, allegedly told were deemed to be minor by the trial court. ECF No. 18-16 at 13-14. Moreover, the prosecutor conceded in its brief to the Court, as well as briefs

-30-

to the lower courts, that the date of the Farmington Hills robbery was misstated in the trial transcript, thereby showing that the misstated date was an accident. Finally, using other acts evidence for purposes other than impeaching Petitioner on cross-examination has already been deemed to be permissible. Therefore, Petitioner has not shown that the prosecutor's conduct was so egregious as to deny him a fair trial.

In regard to his ineffective assistance of counsel claim, counsel cannot be ineffective for failing to object to prosecutorial misconduct when there is no evidence of prosecutorial misconduct in the first place. *See Strickland*, 466 U.S. at 687-91; *Millender*, 376 F.3d at 525. Moreover, deciding when and whether to object to incidents at trial falls within counsel's trial strategy. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight."); *Balboa-Gallardo*, 2012 WL 4923455, at *2 (noting that counsel's challenged actions are presumed to be sound trial strategy). Thus, because Petitioner has not shown that his attorney performed deficiently by not objecting to the above-mentioned allegations of prosecutorial misconduct, or that this failure to object prejudiced his trial,  his ineffective assistance of counsel claim fails.

### vi. Pre-trial Investigations

Petitioner's next claim is that his counsel failed to conduct several pre-trial investigations "including potential defense[s,] favorable witnesses[,] and statutes revolving or relevant to the defense." ECF No. 8 at 19. Specifically, Petitioner stated that his counsel should have: (1) used Willie Mae Hamilton as a rebuttal witness regarding the wrongly mentioned date of the Farmington Hills robbery; and (2) called Officer Alonzi regarding the Keego Harbor bank

-31-

robbrery.[5] ECF No. 8 at 20-21.

It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The duty to investigate derives from counsel's basic function, which is "'to make the adversarial testing process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland,* 466 U.S. at 690). This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *accord Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004). A purportedly strategic decision is not objectively reasonable "when the attorney has failed to investigate his options and make a reasonable choice between them." *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000) (quoting *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir.1991)).

In regard to Willie Mae Hamilton, Petitioner stated that this witness could have been used to rebut the prosecution's "contrived date of the Farmington [Hills] bank robbery." ECF No. 8 at 21. This vague statement does not exculpate Petitioner, nor does it cause sufficient

---

[5]While Petitioner mentioned two other witnesses that should have been called  (a handwriting expert and Parole Officer Hughes) and DVD evidence that should have been admitted by his trial attorney, these claims are omitted from sub-section (vi) because they are raised in separate claims brought by Petitioner under his general ineffective assistance of counsel claim (sub-sections (vii), (xi), and (x)). ECF No. 8 at 20-21.

doubt to undercut the prosecution's case (especially considering that the Farmington Hills

robbery was not the offense for which Petitioner was on trial). *See Millender*, 376 F.3d at 527

("A defense counsel has no obligation to call or even interview a witness whose testimony would

not have exculpated the defendant."). Therefore, trial counsel's failure to call Willie Mae

Hamilton as a rebuttal witness does not constitute deficient performance. Similarly, Petitioner

has not shown that he was prejudiced by counsel's failure to call this witness. As such, this

claim fails.

> To the extent that Petitioner claims his counsel was ineffective for not calling

Officer Alonzi as a witness at trial, this claim also fails. Petitioner claims that Officer Alonzi

would have testified from his report that the robbery suspect from the Keego Harbor bank

robbery did not match his description since the suspect had afro-like hair (he asserts that he has

been bald since 2004) and the suspected vehicle did not match his car. ECF No. 8 at 20. The

state trial court denied this claim in its denial of Petitioner's motion for relief from judgment:

> Defendant next argues that defense counsel was ineffective because
> he failed to call Officer Alonzi as a witness. Defendant claims that
> Officer Alonzi would have testified that he prepared to "be on the
> lookout," or "BOLO," report shortly after the uncharged November
> 9, 2007 robbery of the National City Bank in Keego Harbor,
> indicating that the robbery suspects were driving in a white Dodge
> Intrepid and that the driver had "short style afro hair." Defendant
> contends that this description does not match him because he had a
> silver Dodge Stratus at the time of the robbery and was bald.
> Defendant has submitted a letter from Autotrakk, LLC, dated April
> 28, 2008, indicating that he leased a 2006 Dodge Stratus in
> September 2007. He has also submitted a 2004 OTIS photograph and
> a copy of a Michigan identification card with an unclear expiration
> date, showing him with a bald head. In addition to arguing that
> defense counsel should have called Officer Alonzi as a witness,
> Defendant argues that defense counsel was ineffective for failing to
> impeach Pettus with the description in the BOLO report and for

> failing to emphasize the differences between the BOLO description
> and Defendant's car and hairstyle. Where, as the prosecutor argues,
> a white Dodge Intrepid easily could be mistaken for a silver Dodge
> Stratus, defense counsel was not ineffective for failing to bring this
> issue to the attention of the fact finder. Furthermore, the photographs
> showing Defendant with a bald head are not persuasive where they
> were not taken near the date in question. Defendant has not shown
> that defense counsel's failure to call Officer Alonzi deprived him of
> a substantial defense. *Dixon*, *supra* at 398. Therefore, Defendant has
> not shown that he was denied the effective assistance of counsel on
> the basis of this issue.

ECF No. 18-16 at 11-12. The Michigan state court appropriately applied federal law to

Petitioner's case. *See Bailey*, 271 F.3d at 655. Clearly, Officer Alonzi's testimony would, at best,

provide clarification of minor discrepancies within the record. Moreover, "[t]he decision wether

to call a witness is generally a matter of trial strategy and, absent a showing of prejudice, the

failure to call a witness does not deprive a defendant of effective assistance of counsel." *Samatar*

*v. Clarridge*, 225 Fed. App'x 366, 372 (6th Cir. 2007); *see also Millender*, 376 F.3d at 527

(noting that counsel is not required to call or interview a witness that would not have exculpated

the defendant). Since Petitioner has not shown that Officer Alonzi's testimony would have

exculpated him or likely changed the outcome of his trial, he has not shown that he was

prejudiced by counsel's decision not to call Officer Alonzi as a witness. Thus, this ineffective

assistance of counsel claim also fails.

### vii. Handwriting Expert

Next, Petitioner claims that his counsel was ineffective for not calling a

handwriting expert to testify at his trial: "Failed to endorse a defense favorable expert witness . . .

[handwriting expert] who would have rebutted . . . the state's key witness and alleged co-

defendant's testimony when she testified Petitioner Thomas wrote the robbery notes [Pettus]

gave the tellers in the uncharged similar act [of] Farmington [Hills] and the current conviction [of the] Southfield bank robberies." ECF No. 8 at 19.  This claim also fails.

"In order to 'present an ineffective assistance of counsel claim based on a failure to call a witness, a defendant must make an affirmative showing as to what the missing evidence would have been and prove the witness' testimony would have produced a different result.'" *Walton v. United States*, No. 07-10645, 2007 WL 2868696, at \*5 (E.D. Mich. Sept. 27, 2007) (quoting *Malcum v. Burt*, 276 F. Supp. 2d 664, 679 (E.D. Mich. 2003)). Oftentimes, "in many criminal cases[,] trial counsel's decision not to seek expert testimony 'is unquestionably tactical because such an expert might uncover evidence that further inculpates the defendant.'" *Samatar*, 225 Fed. App'x at 372 (quoting *State v. Glover*, No. CA2001-12-102, 2002 WL 31647905, at \*5 (Ohio Ct. App. Nov. 25, 2002)). Moreover, "even if the wisdom of such an approach is debatable, 'debatable trial tactics' do not constitute ineffective assistance of counsel." *Samatar*, 225 Fed. App'x at 372 (quoting *Glover*, 2002 WL 31647905, at \*5).

At trial, the defense attorney questioned Detective Dziedzic on cross-examination about handwriting samples and handwriting experts, rather than calling a handwriting expert to testify:

> Defense Attorney: Did you by any chance have an opportunity to analyze the handwriting in this case regarding the People's Exhibit 1 [the handwritten robbery note[6]]?
>
> Detective Dziedzic: I did not.
>
> Attorney: This was never sent out to a handwriting expert to decide whether or not either Mr. Thomas or Ms. Pettus did this note?

---

[6]This note was referenced and admitted into evidence during the first day of trial, May 15, 2008. ECF No. 18-3 at 19-20.

> Detective: My understanding is no handwriting analysis was done in this case.
>
> Attorney: So if I show you – if I show you People's Exhibit 1, you wouldn't know whether or not it was from Ms. Pettus or Mr. Thomas; is that right?
>
> Detective: That is a [sic] correct.

ECF No. 18-4 at 86. Based on this excerpt, it appears that the defense attorney's strategy was to show that the burden was on the prosecution to obtain a handwriting expert to evaluate the robbery note in order to prove their theory of the case (rather than the burden being on the defense to obtain such an expert) and to show doubt about whether Petitioner even wrote the note. Even though this trial tactic ultimately did not work, Counsel's performance was not deficient. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight."); *see also Balboa-Gallardo*, 2012 WL 4923455, at *2 (noting it is Petitioner's burden to overcome the presumption that the attorney's actions fell within sound trial strategy). Moreover, Petitioner has not demonstrated that a handwriting expert's testimony would have provided a different end result in his case (since for example, even if the handwriting expert showed that the handwriting was not his, the note would not have exculpated him). *See Walton*, 2007 WL 2868696, at *5. Therefore, because Petitioner has not shown that his attorney performed deficiently, or that this deficiency prejudiced the outcome of his trial, this ineffective assistance of counsel claim fails.

### viii. Impeaching Keyana Pettus

Petitioner claims that his attorney was ineffective when he "[f]ailed to impeach the state's key witness (Keyana Pet[t]us) with her conflicting . . . extrajudicial, custodial

interrogation statements, and with her obvious motive, interest, bias to testify to the satisfaction of the prosecution and to lie about Petitioner Thomas' involvement in any bank robberies." ECF No. 8 at 19. Specifically, Petitioner believes that Pettus lied about: (1) the time and date of the Comerica bank robbery, and (2) Petitioner picking her up from the bus stop and taking her to Petitioner's house on the day of the Comerica robbery (since he claims to have been at the parole office being drug tested at that time). ECF No. 24 at 6-7. In addition, since Petitioner's claim XI is substantially similar to the present claim, it will be raised at this time as well: "The state trial court's judicial determination was an unreasonable determination in light of the evidence presented in the state court when the trial judge determined Pettus' inconsistent (if not perjurious) extra-judicial statements made during police interrogation were <u>minor</u> when the <u>statements</u> compared to Pettus' trial testimony reflect those inconsistencies were significant." ECF No. 8 at 23-24.

   While Petitioner believes that admission of Pettus' interrogation statements would have impeached her trial testimony, he has not shown that this impeachment would have changed the outcome of his trial—meaning he was not prejudiced by his attorney's decision not to admit this evidence. *See, e.g., Gustafson v. Burt*, 467 Fed. App'x 434, 438 (6th Cir. 2012) (failing to impeach witness was not ineffective when jury knew she was testifying on behalf of the prosecution); *Dowdy v. Sherry*, No. 06-CV-10735, 2008 WL 5188827, at *8 (E.D. Mich. Dec. 10, 2008) (noting failure to impeach was not ineffective given the evidence against defendant and other evidence that affected the witness's credibility). The defense's theory, as the state trial court noted, was that "Pettus was not a credible witness and that Pettus committed the Franklin Bank robbery without his knowledge." ECF No. 18-16 at 13. This theory was demonstrated in

the defense attorney's closing argument when he stated: that Pettus was "streetwise" and knew she could always blame Petitioner if she got caught robbing banks; that she was biased since she received a plea agreement if she testified against Petitioner; that she was a "pathological liar;" that she lied in the police report about her age (claiming she was eighteen but was really sixteen) and address; and that her answers in her police interrogation were different than her courtroom testimony. ECF No. 18-7 at 17, 20-22, 33-34; ECF No. 18-16 at 13 (showing the trial court noted that "defense counsel argued in his closing arguments that Pettus was a "pathological liar" and that she was "biased and not a good witness" because she was testifying against Defendant as part of a plea bargain with the prosecutor."). Moreover, the evidence that Petitioner argues his defense attorney should have admitted to impeach Pettus would have been cumulative to his own testimony.  ECF No. 18-16 at 13.  Therefore, Petitioner has not established that his counsel was ineffective. *Balboa-Gallardo*, 2012 WL 4923455, at *2 (noting it is Petitioner's burden to overcome the presumption that the attorney's actions fell within sound trial strategy).

### ix. Farmington Hills Objection

Petitioner claims that his counsel was ineffective for failing to "object to the state's deliberate, perjurious and fraudulent misrepresentation of the date of the Farmington [Hills] bank robbery." ECF No. 8 at 19.  Petitioner believes that this point is important because he was at the parole office on the date of the Farmington Hills robbery. ECF No. 8 at 21. The state trial court made the following findings in regard to the date of the Farmington Hills robbery:

> Keyana Pettus testified at trial that she and Defendant robbed the Comerica Bank in Farmington Hills on November 7, 2007. Defendant has submitted an "Investigative Bulletin" from the Farmington Hills Police Department, however, indicating that the Comerica Bank robbery occurred on November 8, 2007, at approximately 12:50 p.m.,

and the prosecution appears to concede in its brief in response to Defendant's motion for relief from judgment that the Comerica Bank robbery occurred on November 8, 2007 . . . . Furthermore, while Defendant has submitted evidence that he met with his parole officer at some point on November 8, 2007, he has not shown the time period of his visit. With his supplemental brief in support of his motion for relief from judgment, Defendant submitted an e-mail between two Michigan Department of Corrections employees that appears to contain information regarding Defendant's probation. The document states, "On-Site Urine Test taken this date by MDOC Employee JOSEPH JOHNSON. Test result Negative." The last line of the document states, "Last Updated by foappn1C on 11/08/07 at 8:33:00 from 10.58.36.100." Defendant contends that this document shows that he visited the parole officer from 8:30 until 10:58 a.m. on November 8, 2007, and, therefore, could not have committed the Comerica Bank robbery. While the document supports Defendant's claim that he visited his parole officer on November 8, 2007, the document merely indicates that it was *updated* at 8:33 on November 8, 2007, and therefore Defendant must have taken a urine test sometime before then. The document does not show that Defendant was at the parole office from 8:33 am until 10:58 am, and therefore it does not provide an alibi regarding Defendant's whereabouts at the time of the Comerica Bank robbery at approximately 12:50 p.m. Therefore, even if the prosecutor had corrected the testimony, Defendant has not shown that the correction would have had any effect on the outcome of the trial.

ECF No. 18-16 at 8-9. The state court's analysis comports with the federal rules pertaining to ineffective assistance of counsel. *Bailey*, 271 F.3d at 655. The purpose of correcting the date, as the trial court points out, was to provide him with an alibi for the date of the Farmington robbery. However, this "alibi" likely would not have changed the outcome of his trial given that the information contained in the documents he presented in support of this alibi were ambiguous. Consequently, Petitioner has not established that his counsel performed deficiently, or that his case was prejudiced from any deficient performance. *See United States v. Pierce*, 403 Fed. App'x 988, 989 (6th Cir. 2010) (noting it is not ineffective assistance if counsel does not raise

erroneous claims); *see also Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("Counsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel."). As such, Petitioner's claim fails.

### x. Parole Officer Hughes

In a related claim, Petitioner alleges that his counsel was ineffective by failing to call Parole Officer Hughes as a witness during his trial in order to correct the date that the Farmington Hills robbery occurred. ECF No. 8 at 19. The Michigan trial court considered this claim in its denial of Petitioner's motion for relief from judgment:

> Defendant next argues that he was denied the effective assistance of counsel due to defense counsel's cumulative errors. Defendant first argues that defense counsel was ineffective because he failed to investigate and call parole officer Antoinette Hughes as an alibi witness to show that he could not have committed the uncharged prior robbery of Comerica Bank on November 8, 2007. "Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy." *People v. Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). The failure to call a particular witness amounts to ineffective assistance of counsel only if it deprives the defendant of a substantial defense. *People v. Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). Defendant has not submitted an affidavit from Ms. Hughes and, as explained above, Defendant has not shown the time[]frame of his visit to his parole officer on November 8, 2007. Under these circumstances, Defendant has not shown that the failure to call Ms. Hughes as a witness denied him a substantial defense. Accordingly, Defendant has not shown that defense counsel was ineffective for failing to call Ms. Hughes as a witness, or that appellate counsel was ineffective for failing to raise an ineffective assistance of counsel issue on this basis on appeal.

ECF No. 18-16 at 10-11. The state court properly applied federal laws to the facts of Petitioner's case. *Bailey*, 271 F.3d at 655. As previously mentioned, the decision to call a witness is a matter within counsel's trial strategy that, absent a showing of prejudice, does not make counsel's

performance deficient. *Samatar*, 225 Fed. App'x at 372; *see also Millender*, 376 F.3d at 527 (noting that counsel is not required to call or interview a witness that would not have exculpated the defendant). Since Petitioner's theory for having Parole Officer Hughes testify is to have her corroborate his whereabouts on the day of the Farmington robbery, and that theory has been discredited by the lower court after applying appropriate law, it follows that counsel's performance was not deficient and it similarly did not prejudice Petitioner's case. *See Walton*, 2007 WL 2868696, at *5. Therefore, this claim also fails.

### xi. Supporting DVDs

Petitioner claims that counsel was ineffective for failing to present DVDs of Pettus' custodial interrogation as well as documents that he believes would refute the prosecutor's theory that he was involved in any robberies. Again, the state trial court considered and dismissed this claim in its denial of Petitioner's motion for relief from judgment:

> Defendant next argues that defense counsel was ineffective because he failed to have admitted into evidence a DVD of Pettus' statement to the police after the Franklin Bank robbery. While the DVD itself was not admitted into evidence, a police report regarding Pettus' interview by Detective Litteracki [sic] was admitted into evidence. Defense counsel cross-examined Pettus regarding inconsistencies between her trial testimony and her statement to the police and argued that Pettus lied to the police and was not credible. The trial court noted the inconsistencies between Pettus' trial testimony and statement to the police, but found that the inconsistencies were minor. Where a police report regarding Pettus' statement to the police was admitted into evidence, Defendant has not shown that the failure to introduce the DVD itself constituted ineffective assistance of counsel.

ECF No. 18-16 at 13-14. The trial court appropriately summarized the scenario surrounding the DVDs at trial and properly applied the law of ineffective assistance of counsel to Petitioner's case. *Bailey*, 271 F.3d at 655. Defense counsel repeatedly questioned Officer Dziedzic about the

-41-

content of the report and associated DVD interrogation of Pettus and ultimately decided that admitting the DVD into evidence was not necessary based on the testimony stemming from the questions about the police report. ECF No. 18-4 at 80-103.  Moreover, the record implies that counsel reviewed the videos, understood their content, and opted for another way to elicit the content of those videos (showing he elected a trial strategy).  Therefore, since Petitioner has not shown how this evidence would exculpate him or how counsel's failure to admit the DVDs into evidence constituted deficient performance, this claim also fails.

### xii. *Miranda*-less Confession

Petitioner next claims that his counsel was ineffective when he elicited testimony from a state witness regarding a *Miranda*-less confession made by Petitioner that helped satisfy the elements of the offenses for which he was charged. ECF No. 8 at 19. However, upon review of the trial transcript, Petitioner appears to have misstated or misinterpreted his attorney's actions at trial.  To support his position, Petitioner cited to his counsel's cross-examination of Detective Dzeidzic, which stated:

> Defense Attorney: You indicate here that he [Petitioner] reads and
> rights and he was given his *Miranda* warnings?
>
> Detective Dziedzic: Yes.
>
> Attorney: Early on?
>
> Detective: Yes, sir.
>
> . . . .
>
> Attorney: Did he sign the *Miranda* warnings?
>
> Detective: No, he did not.

-42-

. . . .

> **Attorney**: In fact[,] he was responding appropriately enough to say to you that hey, I don't want to sign the *Miranda* warnings?
>
> **Detective**: Correct.
>
> **Attorney**: But you don't find that to be an indication that you should stop interrogating Mr. Thomas?
>
> **Detective**: I do not.
>
> **Attorney**: Even when an individual in custody says they don't want to sign the *Miranda* warnings, you still want them to do the interview?
>
> **Detective**: Yes and let me explain why I say yes.
>
> **Attorney**: No, I don't want you to explain it.
>
> . . . .
>
> **Attorney**: Your job is to interview the prospective suspect and find out if they're going to give you a confession or something?
>
> **Detective**: Basically, yes.
>
> **Attorney**: Well, he couldn't give you a confession because he refused to sign the *Miranda* warnings, right?
>
> **Detective**: That's not right.

ECF No. 18-4 at 78, 81, 88. Based on these statements, it does not appear that Petitioner's trial attorney elicited any testimony regarding a *Miranda*-less confession; rather, the cross-examination simply clarified that Petitioner refused to sign a *Miranda* warning despite verbally being informed of his rights. This line of questioning does not establish any elements of either for the charges for which Petitioner was convicted (as Petitioner argues).

Moreover, Petitioner cites *Edwards v. Arizona*, 451 U.S. 477 (1981) to support his

position that his *Miranda*-less confession should not have been mentioned at trial. However, this concept is not what *Edwards* stands for; rather, the *Edwards* court held that after a suspect has been provided his *Miranda* warnings **and then requests counsel**, "a valid waiver of that right [to counsel] cannot be established by showing only that [the suspect] responded to further police-initiated custodial interrogation even if [the suspect] has been advised of his rights." *Edwards*, 451 U.S. at 484. At no point in Petitioner's trial was it uncovered that he requested counsel after being told his *Miranda* rights. Rather, Petitioner simply indicated that he would not sign the *Miranda* warnings, yet continued to talk to law enforcement.

Overall, Petitioner has not demonstrated that his attorney performed deficiently by asking the above-mentioned questions to Detective Dziedzec on cross-examination. The line of questioning appears to have been an attempt by Petitioner's attorney to show police misconduct. While this strategy may not have worked, it does not mean that counsel's performance was deficient. *Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight."); *see also Balboa-Gallardo*, 2012 WL 4923455, at *2 (noting it is Petitioner's burden to overcome the presumption that the attorney's actions fell within sound trial strategy). Therefore, Petitioner's ineffective assistance of counsel claim fails.

### xiii. Photographs

Petitioner claims that his trial counsel was ineffective when he "[p]rovided (thus introduced) the highly prejudicial and irrelevant nude or sexual photographs of Petitioner Thomas and Keyana Pettus thereby establishing Petitioner Thomas was at least guilty of CSC 4th degree or 1st degree." ECF No. 8 at 19. The photographs Petitioner is referring to were

-44-

*produced* by defense counsel during discovery and then *introduced* during trial by the prosecution in order to question Keyana Pettus about her relationship with Petitioner (which the prosecutor used for her theory of the case to prove that Petitioner knew about, and was an accomplice to, the bank robbery). ECF No. 18-5 at 18-28.  Therefore, since defense counsel is supposed to participate in the discovery process, the Court presumes Petitioner's claim stems from his counsel's failure to object when the prosecutor introduced these photographs during trial.

As previously mentioned, great deference is afforded to an attorney's decisions relating to trial strategy, such as choosing when to object.  *See, e.g., Lucas*, 179 F.3d at 420 ("'Only in a rare case' will a court find ineffective assistance of counsel based upon a trial attorney's failure to make an objection . . . .") (citation omitted); *Adams*, 2009 WL 2515709, at *8 ("Trial counsel's failure to object is not usually deficient performance for purposes of an ineffective assistance of counsel claim.") (citation omitted). This is because, for example, an attorney may have chosen not to object in order to "avoid highlighting those comments." *Butler*, 1995 WL 73132, at *9.

Defense counsel, in this case, may have chosen not to object because he did not want to highlight these photographs to the judge, or because he wanted to use these photographs to bolster the defense's theory of the case. (that theory being that Keyana Pettus was a bad witness and not credible given her activities of daily life). ECF No. 18-7 at 16-18, 20, 26 (noting that during closing arguments, defense counsel called Pettus a liar, hooker, and dancer in order to diminish her credibility). Consequently, Petitioner has not demonstrated that his attorney performed deficiently by not objecting to the prosecutor's introduction of these photographs

during trial.  Thus, this claim fails.

### xiv. Knowledge of Case Law and the Mere Presence Jury Instruction

Petitioner's final two ineffective assistance of counsel claims state that counsel was ineffective: (1) by not knowing about the law that would have allowed a handwriting expert to testify during his trial, which he believes would have ultimately allowed him to establish the "mere presence" defense (ECF No. 8 at 19), and (2) by failing to "request an instruction on merely presence pursuant to CJI2d 8.5" (ECF No. 8 at 20).

"Failure to request jury instructions for which there is an evidentiary basis may constitute ineffective assistance of counsel warranting collateral relief when this failure inadvertently loses the defendant's only defense which had a strong likelihood of success. *Millender*, 187 F. Supp. 2d at 874 (citing *United States v. Span*, 75 F.3d 1383, 1388-90 (9th Cir. 1996)). On the other hand, failing to request an additional instruction "is not ineffective assistance when the evidence, the general instruction given, and counsel's closing argument, including his examples and stress on common sense, put the issue squarely before the jury." *Id.* (citing *Weighall v. Middle*, 215 F.3d 1058, 1063 (9th Cir. 2000)).  In general, "there is a strong presumption that counsel was adequate; an act or omission only meets the standard of ineffectiveness if it was 'outside the wide range of professionally competent assistance.'" *Walton*, 2007 WL 2868696, at *5 (quoting *Strickland*, 466 U.S. at 690).

Petitioner  has not provided any evidence to demonstrate that his attorney was unaware of, or overlooked, law applicable to his case. In fact, upon viewing defense counsel's closing arguments and motions made just prior, it is clear that Petitioner's attorney was versed in the law of Petitioner's case and able to argue it in Petitioner's favor.  *See* ECF No. 18-7 at 1-36.

-46-

Moreover, the defense's theory of the case essentially was "mere presence," so Petitioner did not suffer any prejudice by his attorney not having explicitly referred to his defense as the "mere presence" defense. *Walton*, 2007 WL 2868696, at *5. Therefore, Petitioner has not demonstrated that his counsel's performance fell below the standard of professionally competent assistance for purposes of ineffective assistance of counsel.  As such, this claim fails.

### I.  Trial Transcript

Petitioner's claim IX is that he was denied "the right to an appeal of right and the effective assistance of appellate counsel . . . when he was denied accurate transcripts because segments of the trial transcripts (basic tools of an appeal) were altered to reflect testimony diverse from the actual trial testimonies, thereby constructively constituting no transcript at all." ECF No. 8 at 22-23.

Courts "must presume that the trial transcript accurately reflects the proceedings in the trial court." *Williams v. Romanowski*, No. 2:06-CV-12670, 2008 WL 6875005, at *43 (E.D. Mich. Jan. 29, 2008). Inaccuracies or incomplete trial transcripts are not *per se* denials of the due process right to a fair appeal.  *Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir. 1986). To show the denial of an appeal, "a habeas petitioner must show that prejudice, [meaning] something more than gross speculation, resulted . . . ." *Range v. Berghuis*, No. 09-10945, 2015 WL 1967030, at *14 (E.D. Mich. Apr. 30, 2015).

Here, while Petitioner points to places in which he believes the trial transcript was materially altered, it is clear upon review of the record that these changes were minor.

Specifically, Petitioner points to four places in the transcript that were altered.[7] The first

inconsistency arises from Petitioner's exhibits 13 and 14.  On document 13, it states:

> A: The officer that shocked me, while the taser is in me, we on top of
> the hill. He's telling me, "Don't move."
>
> Q: Right.  Then what happened?

ECF No. 8 at 60. In comparison, document 14 states:

> A: The officer that shocked me –
>
> Q: Yes.
>
> A: While the taser is in me –
>
> Q: Yes.
>
> A: We on top of the hill.
>
> Q: Right.
>
> A: He's telling me, "Don't move."
>
> Q: Right. Then what happened?

ECF No. 8 at 62.  While Petitioner is correct in that these two portions of the transcript were

transcribed differently, he is incorrect in claiming that this change could have affected his direct

appeal.  In fact, the three other changes in the transcript that Petitioner references were also

insignificant changes. *See* ECF No. 8 at 64-66 (omitting from the transcript the Judge's

interjection asking that the question be repeated); ECF No. 8 at 68-70 (changing a "yes, sir" to a

"No, sir" in response to a date); ECF No. 8 at 72-74 (changing a "yes, sir" to a "no, sir" in

---

[7]Petitioner noted that he has two copies of his transcript because the court reporter Gwendolyn Finley transcribed a segment of his testimony on May 28, 2008, and then made a second transcription of the entire trial transcript on September 12, 2008.  ECF No. 8 at 22. In addition, the Court will only address these four instances under claim IX, despite there being more instances raised, since these claims are the only ones that have specific exhibits and citations for the Court to reference.

response to whether the backseat of the car was down). The changes made are clearly minute and irrelevant to the overall outcome of his case given that the content of the transcripts remained the same.

Because Petitioner has not provided any other evidence to support his claim that the transcripts were improperly transcribed, other than his own word, the Court must deny this habeas claim. *See Norris v. Schotten*, 146 F.3d 314, 333 (6th Cir. 1998) ("Besides his own speculations, appellant also does not present any reason why we should suspect these transcripts to be inaccurate.").

## III.

This Court concludes that all of Petitioner's claims are without merit. Should Petitioner choose to appeal this action, the Court must determine whether a certificate of appealability may be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Each issue must be considered under the standards set forth in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. The Court examined each of Petitioner's claims under the *Slack* standard and concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the Court denies a certificate of appealability to each issue raised.

For the same reasons the Court dismissed this action, the Court will certify that

any appeal by Petitioner from the Court's decision and judgment would be frivolous and not taken in good faith, pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24.  Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal is hereby **DENIED**.

   In summary, Petitioner's motion for post-conviction relief (ECF No. 1; ECF No. 8) pursuant to 28 U.S.C. § 2254 is **DENIED and DISMISSED WITH PREJUDICE**. As a result, Petitioner's motion for time to file a brief (ECF No. 23) and motion for an evidentiary hearing (ECF No. 26) are denied as moot. A judgment consistent with this Opinion and Order will be entered.

   **SO ORDERED**.


      __/s/ *R. Allan Edgar*_____
      R. ALLAN EDGAR
      UNITED STATES DISTRICT JUDGE

Dated: 1/19/2016